UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ISAIAH JOEL PETILLO, | CASE No. 1:16-cv-0488- MJS (PC) |
|---|---|
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | (ECF NO. 1) |
| J.L. PETERSON, et al., | THIRTY-DAY DEADLINE |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is before the Court for screening. Plaintiff has consented to the jurisdiction of a magistrate judge.

**I.   SCREENING REQUIREMENT**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.   PLEADING STANDARD**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for

vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.    PLAINTIFF'S ALLEGATIONS

At all relevant times Plaintiff was an inmate housed at California Correctional Institution ("CCI") in Tehachapi, California.[1] He names as Defendants CCI Correctional Officers ("CO") R. Harris and J. Gonzalez and Lieutenant ("Lt.") J.L. Peterson.

Plaintiff's claims can be summarized essentially as follows:

On November 4, 2012, CO Gonzalez placed handcuffs on Plaintiff tightly and roughly escorted him from his cell to outside the building in which he was housed. Once outside, CO Gonzalez forcefully and without provocation slammed Plaintiff violently onto the pavement, causing injury to Plaintiff's left shoulder, left elbow, left knee, and the left side of his face. This incident left Plaintiff stunned and bleeding. CO Gonzalez, who is

---

[1] Plaintiff is now housed at Corcoran State Prison in Corcoran, California. (ECF No. 6.)

2

1  approximately 200 pounds, then sat on Plaintiff's head, and he pressed his right knee
2  hard into Plaintiff's face and head. Plaintiff was only 143 pounds at the time.
3       Non-party CO Weathers observed the incident from the yard gun tower and
4  activated the alarm button. Within seconds, a number of prison guards came running to
5  where CO Gonzalez and Plaintiff were.
6       One of the guards, CO Harris, struck Plaintiff twice with a steel baton, again
7  without provocation. Plaintiff was still on the ground at this point. Though this Defendant
8  was yelling "Stop resisting," Plaintiff was not resisting because he was still stunned from
9  the body slam by CO Gonzalez.
10      Following this incident, Plaintiff was taken to the medical unit where CO Harris
11 directed Plaintiff to face the wall. When Plaintiff complied, CO Harris punched Plaintiff
12 twice in the facial/head area and said, "Nigger you're were [sic] in my building I'll kill
13 you."
14      In the medical unit, Plaintiff was placed in a small cage for "[at] least an hour or
15 two, may be longer" with the tight handcuffs before someone removed them.
16      After the assault, "strange things began to happen, my mail start disappearing &
17 tampered with." Plaintiff does not assert any facts related to this allegation.
18      An investigation of the assault occurred, and Plaintiff was interviewed by non-
19 party CO Crotty who told Plaintiff that a video of the assault did not exist. Plaintiff later
20 learned that a video taken from the yard tower did exist.
21      On December 13, 2012, Senior Hearing Officer CO Peterson conducted a hearing
22 concerning the November 4, 2012, assault. Plaintiff requested the presence of CO Crotty
23 at the hearing.  CO Peterson's denial of this request violated Plaintiff's right to a fair trial.
24 As to the video of the assault, CO Peterson also denied Plaintiff's request to view it.
25 Instead, CO Peterson viewed the video outside of the presence of Plaintiff, claiming that
26 it showed Plaintiff dipping his shoulder toward one of the officers. In light of this
27 evidence, CO Peterson found Plaintiff guilty of assault on a peace officer. Plaintiff denies
28 making any threatening conduct towards either CO Gonzalez or CO Harris and asserts

that his due process rights were violated because CO Peterson was not a fair hearing officer.

Plaintiff attempted to exhaust his administrative remedies regarding the December 13, 2012, hearing, but was threatened by an unidentified lieutenant, who said, "You should drop the 602 complaint if you know what's best for you." This lieutenant said that Plaintiff won't leave in one piece if he does not drop the grievance. Fearing for his life, Plaintiff dropped his grievance.

Plaintiff seeks injunctive relief and damages.

## IV. ANALYSIS

### A. *Heck* Bar

Plaintiff was found guilty of assault on a peace officer at the December 2012 hearing, but he does not specify what punishment, if any, he suffered. If Plaintiff suffered a loss of good-time credits and if the guilty finding had not been expunged or reversed, certain claims[2] may be barred under the favorable termination rule.

Generally, state prisoners may not challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the Heck bar,[3] this limitation applies whenever state prisoners "seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81 (emphasis in original). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its

---

[2] As discussed infra, Plaintiff's excessive force claims may be cognizable despite any loss of good-time credits. Plaintiff's First Amendment retaliation claim is also cognizable.

[3] See Heck v. Humphrey, 512 U.S. 477 (1994).

4

duration." Id. at 81-82. The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. Edwards v. Balisok, 520 U.S. 641, 646-48 (1997).

Here, Plaintiff alleges, inter alia, that CO Gonzalez and CO Harris attacked him without provocation and that CO Peterson denied him due process. A favorable finding on these claims would necessarily imply the invalidity of the disciplinary finding. Assuming Plaintiff suffered the loss of good-time credits, there is no allegation that Plaintiff's disciplinary conviction has been reversed, expunged, or otherwise invalidated. Where the success of the prisoner's action would decrease the length of his sentence, a § 1983 claim is not cognizable until the disciplinary conviction has been invalidated. Edwards, 520 U.S. at 648.

Under the facts alleged, though, the Court cannot determine whether Heck applies to Plaintiff's claims because it is unclear if Plaintiff lost good-time credits as a result of the finding of guilt. Plaintiff will be given an opportunity to amend the complaint to clarify the issue. If Plaintiff chooses to amend his complaint, he must address (1) whether he suffered the loss of any good-time credits, (2) if he did, whether the disciplinary conviction at issue has been overturned or invalidated and (3) if he did lose good-time credits and the disciplinary has not been overturned or invalidated, whether a decision overturning the disciplinary would affect the length of his sentence. Accordingly, Plaintiff's complaint will be dismissed with leave to amend.

**B.  Eleventh Amendment Immunity**

Plaintiff does not clarify whether he is bringing suit against the Defendants in their official capacities. In the event that he is, Plaintiff's claim for damages is barred. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491

(9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991).

### C.  Eighth Amendment Excessive Force

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is "... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for

application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

### 1. The November 2012 Assault

Assuming that Heck does not apply to this case, the Court finds that all of Plaintiff's allegations against CO Gonzalez and CO Harris are sufficient to state a claim for excessive force. He asserts that these Defendants assaulted him without provocation outside of the building where Plaintiff was housed, and that CO Harris assaulted him without provocation in the medical unit.

However, assuming that Plaintiff's claims are subject to Heck, Plaintiff's formulation of the excessive force claim related to the assault on the sidewalk would not be cognizable in this action because it would undermine Lt. Peterson's finding that Plaintiff dipped his shoulder which resulted in the use of force. The Ninth Circuit, though, has suggested that Heck does not bar all excessive forces claims in a § 1983 action because not all are a collateral attack on a conviction. See Hooper v. County of San Diego, 629 F.3d 1127 (9th Cir. 2011) ("[A] plaintiff alleging excessive force 'does not collaterally attack his conviction [or] deny that he resisted.... Rather, [plaintiff] claims that he suffered unnecessary injuries because [the] response to his resistance ... was not ... objectively reasonable.'") (internal citation omitted). Thus, the allegations in the complaint can be fairly construed as follows: in response to Plaintiff dipping his shoulder, CO Gonzalez and CO Harris reacted with excessive force in subduing Plaintiff. Under this construction, success on this claim would not necessarily invalidate Plaintiff's

conviction for assault on a peace officer. As to the assault that occurred in the medical unit by CO Harris, this conduct occurred after Plaintiff was subdued and would not be affected by Heck.

Nonetheless, in light of the uncertainty regarding the applicability of Heck to this action, this claim must be dismissed with leave to amend.

### 2.     The Tight Handcuffs

"[O]verly tight handcuffing can constitute excessive force." Wall v. Cnty of Orange, 364 F.3 1107, 1112 (9th Cir. 2004) (Fourth Amendment claim). "The Ninth Circuit has held that excessively tight handcuffing can constitute [excessive force], but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." Cf. Dillman v. Tuolumne County, 2013 WL 1907379 at *8 (E.D. Cal. 2013) (citing Wall v. County of Orange, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee suffered nerve damage as a result of continued restraint in tight handcuffs); LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee complained to officer who refused to loosen handcuffs); Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993) (arrestee's wrists were discolored and officer ignored his complaint), with Hupp v. City of Walnut Creek, 389 F.Supp.2d 1229, 1233 (N.D. Cal. 2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight).)[4]

---

[4] In Smith v. Yaroborough, 2008 WL 4877464 at *12 n.3 (C.D. Cal. 2008), the Central District also considered the type of injury required in a case alleging excessive force based on overly tight handcuffs. After surveying the case law, the Central District found that, "[i]n general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendants to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by defendant." Id., citing Shaw v. City of Redondo Beach, 2005 WL 6117549, at *7 (C.D. Cal. 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or other forms of abusive conduct in conjunction with the tight handcuffing.")

Any claim related to the tight handcuffs placed on Plaintiff fails because he admits that he "did not say any thing, once the handcuffs were on." His failure to complain about the pain and his failure to allege any injury resulting from the tight handcuffs renders this claim insufficient to proceed.

### D.     **Fourteenth Amendment Due Process**

As for Plaintiff's claim that Lt. Peterson violated Plaintiff's due process throughout the hearing, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). An inmate subject to disciplinary sanctions that include the loss of good time credits must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the action, id. at 564-65; (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff claims that Lt. Peterson was an impartial fact finder because he denied Plaintiff's request to call CO Crotty as a witness and because he denied Plaintiff's request to view the video of the incident. Inmates are entitled to a fair and impartial decision-maker at disciplinary hearings. Edwards v. Balisok, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."); In re Murchison, 349 U.S. 133, 136 (1955) ("[a] fair trial in a fair tribunal is a basic requirement of due process"); White v. Indiana Parole Board, 266 F.3d 759, 767 (7th Cir. 2001) ("Wolff holds that prisoners are entitled to impartial decisionmakers" (citations omitted)). In order to prevail on a claim of judicial bias, a petitioner must

overcome a "strong presumption that a judge is not biased or prejudiced." Sivak v. Hardison, 658 F.3d 898, 924 (9th Cir. 2011) (quoting Rhoades v. Henry, 598 F.3d 511, 519 (9th Cir. 2010)).

Turning first to Plaintiff's right to call witnesses, this right is not absolute. Wolff gives prison officials flexibility to keep the hearing within reasonable limits and allows them to refuse to call witnesses when doing so would risk reprisal or undermine authority, or when the evidence would be irrelevant, unnecessary, or hazardous. Wolff, 418 U.S. at 566. Though Plaintiff asserts that he sought CO Crotty's presence "in regard about the security video tape," he does not explain why the testimony of this witness was necessary since Lt. Peterson both acknowledged the existence of the tape and considered it as evidence. There is no due process violation on these facts.

Turning next to Lt. Peterson's refusal to allow Plaintiff to view the video of the incident, Plaintiff does not have a constitutional right to view the evidence used against him, only to be provided a written statement by the fact finder as to the evidence relied on and the reasons for the action. Plaintiff does not allege that he did not receive this process. Furthermore, the evidence that he sought to have considered was in fact considered. Any challenge to the integrity or legal sufficiency of the evidence will not support a claim. See Hill, 472 U.S.C. at 455–56.

Plaintiff offers no other allegations that would establish the fact finder was not sufficiently impartial. On the facts alleged, then, Plaintiff fails to state a due process claim against Lt. Peterson.[5] Nonetheless, the Court will grant Plaintiff leave to amend to assert any additional allegations that he may have as to this claim.

### E. First Amendment Retaliation

The Ninth Circuit has defined the parameters of a First Amendment retaliation claim:

---

[5] If Heck is applicable to this action, this claim would be barred since success on it would invalidate the disciplinary conviction.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.2005) (footnote and citations omitted).

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes, 408 F.3d at 568 n. 11). Moreover, "the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Id. at 1270. Nor need the threat be explicit or specific. Id. A prisoner must also show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." Id. at 1271 (internal quotation marks and citation omitted).

Plaintiff adequately alleges that an unidentified Lieutenant threatened to harm him if Plaintiff did not abandon his grievance following the November 2012 assaults and the December 2012 hearing, and that, as a result of this threat, Plaintiff did abandon his grievance. Plaintiff, however, does not identify this individual by name or even give him a John Doe designation. Thus, in an amended complaint, if Plaintiff intends to proceed with a retaliation claim against this individual, he shall make an effort to properly identify this person.[6]

Plaintiff also contends that following the assault, "strange things began to happen, my mail start disappearing & tampered with." Plaintiff does not assert any additional facts

---

[6] This claim would not be subject to a Heck-bar since it is not a direct or indirect challenge to the fact or duration of Plaintiff's confinement.

11

related to this allegation, and he does not link it to any Defendant or to any protected conduct. Accordingly, this claim fails.

### F.    Verbal Harassment and Threats

To the extent Plaintiff bases a claim on CO Harris's verbal harassment and threat, he fails to state a claim because allegations of verbal harassments and threats do not state a cognizable claim under 42 U.S.C. § 1983. See Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir.1981) (verbal harassment and abuse not cognizable claim under 42 U.S.C. § 1983).

## V.    CONCLUSION

Based on the foregoing, Plaintiff's complaint states an excessive force claim against CO Gonzalez and CO Harris, as well as a First Amendment retaliation claim against an unidentified Lieutenant, but certain claims may be Heck-barred. As noted supra, if Plaintiff chooses to amend his complaint, he must address (1) whether he suffered the loss of any good-time credits as a result of the disciplinary conviction, (2) if he did, whether the disciplinary conviction has been overturned or invalidated and (3) if he did lose good-time credits and the disciplinary conviction has not been overturned or invalidated, whether a decision overturning the disciplinary would affect the length of his sentence. Additionally, a first amended complaint must state what each named Defendant did that led to the deprivation of his constitutional rights. Iqbal, 556 U.S. at 676-77. Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Plaintiff is also advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an "amended complaint supersedes the original" complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First

Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's April 7, 2016, Complaint (ECF No. 1) is dismissed with leave to amend;

2. Plaintiff shall file a First Amended Complaint within thirty days from the date of this Order; and

3. Plaintiff's failure to file an amended complaint within thirty days will result in a recommendation that this action be dismissed without prejudice for failure to prosecute and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   June 27, 2016            /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE