UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH JOEL PETILLO,<br><br>Plaintiff,<br><br>v.<br><br>J.L. PETERSON, et al.,<br><br>Defendants. | **CASE No. 1:16-cv-0488- MJS (PC)**<br><br>**ORDER TO ASSIGN A DISTRICT JUDGE; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>**(ECF NO. 26)**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on April 7, 2016, and is proceeding on his First Amended Complaint against California Correctional Institution ("CCI") Correctional Officers ("CO") R. Harris and J. Gonzalez and CCI Lt. M. Lopez. (ECF Nos. 9, 15.)

Defendants have moved for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies. Plaintiff opposes the motion. For the reasons set forth below, the undersigned will recommend that Defendants' motion be granted in part.

**I.      Plaintiff's Allegations**

On November 4, 2012, CO Gonzalez placed handcuffs on Plaintiff tightly and roughly escorted him from his cell to outside the building. Once outside, CO Gonzalez slammed Plaintiff onto the pavement without provocation, injuring Plaintiff's left shoulder, left elbow, left knee, and the left side of his face. Plaintiff was stunned and bleeding. CO Gonzalez then sat on Plaintiff's head, and pressed his right knee hard into Plaintiff's face and head.

An alarm was activated from the yard gun tower. Within seconds, a number of prison guards came running. One of the guards, CO Harris, struck Plaintiff twice with a steel baton, without provocation; Plaintiff was still on the ground. Though Harris was yelling "Stop resisting," Plaintiff was not resisting.

Plaintiff was then taken to the medical unit where, after complying with Harris's order to face the wall, Harris punched Plaintiff twice in the facial/head area.

At a subsequent Rules Violation Report ("RVR") hearing relating to the November 4, 2012, incident, Plaintiff was found guilty of assault on a peace officer and assessed 90 days of good time credit. He was also placed in isolation for 7 months. The conviction has not been overturned, but the lost good time credit reportedly has been restored. See Fir. Am. Compl. at 15.

Plaintiff later filed a 602 complaint but was told by Lt. Lopez, to drop it "if you know what's best for you." While pounding his fist into his hand/palm, Lopez also told Plaintiff you "won't leave in one piece" if he didn't drop the grievance. Fearing for his safety, Plaintiff dropped the grievance.

**II.     Facts[1]**

**A.      The Rules Violation Report and the RVR Hearing**

On November 6, 2012, CO Gonzales issued a RVR charging Plaintiff with Assault on a Peace Officer. Decl. of J. Wood in Supp. of Defs.' Mot. Summ. J. Ex. C (ECF No.

---
[1] All facts are undisputed unless noted otherwise.

2

26-6 at 9). Per the RVR report, Plaintiff took a stance during the November 4, 2012, transport that CO Gonzales interpreted as threatening. Accordingly, CO Gonzales put Plaintiff on the floor and repeatedly told him to stop resisting. Plaintiff ignored the commands. CO Gonzales landed on Plaintiff to pin him down. CO Harris came behind CO Gonzales yelling "Stop resisting."

On November 16, 2012, Plaintiff received a copy of the CDC 115 Form charging him with a serious rules violation. Pl.'s Opp'n (ECF No. 29 at 13). Plaintiff appeared in person at the December 13, 2012, RVR hearing and entered a not guilty plea. He was ultimately found guilty of the charge. Wood Decl. Ex. C (ECF No. 26-6 at 33).

### B. Plaintiff's Inmate Grievances

#### 1. Appeal Log No. CCI-0-12-03124

On December 21, 2012, Plaintiff submitted an inmate appeal, Appeal Log No. CCI-0-12-03124. Wood Decl. Ex. B (ECF No. 26-5 at 5-7), complaining about CO Gonzalez's excessive force on November 4, 2012. He did not name CO Harris or suggest his involvement in the excessive force incident. Plaintiff sought to (1) amend the RVR record to include his rebuttal, (2) have the RVR dismissed, and (3) have CO Gonzales's pay reduced.

On January 4, 2013, Plaintiff's appeal was bypassed at the first level of review and then canceled at the second level on the ground that it contained unrelated issues, specifically an allegation of staff misconduct and issues with the RVR. Wood Decl. Ex. B (ECF No. 26-5 at 4). The staff misconduct claim was found to be untimely, i.e., filed over 30 days beyond the November 4, 2012, incident. As to the RVR issues, Plaintiff was advised to file a separate appeal once the RVR process was complete. The bottom portion of the cancelation notice advised that "once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision." See id.

Plaintiff denies that he ever received a copy of this notice. He maintains he was not even aware the appeal had been canceled until Defendants filed the instant motion. Pl.'s Opp'n at 5-6.

Plaintiff did not appeal the January 4, 2013, cancellation notice. Wood Decl. ¶ 11

Notwithstanding the cancellation, Plaintiff's appeal was referred on January 3, 2012, to the Chief Deputy Warden for "Determination of Staff Complaint." Wood Decl. ¶ 11, Ex. B (ECF No. 26-5 at 2). The next day, the Chief Deputy Warden determined that the appeal would be "[a]ssign[ed] for review outside the Appeal Process via an Inquiry or Investigation." Wood Decl. Ex. B (ECF No. 26-5 at 2). It was then assigned to the Facility A Captain on January 7, 2013, for an "Appeal Inquiry" into the allegation of inappropriate use of force. Id. (ECF No. 26-5 at 3). There is no further information in the record regarding this Appeal Inquiry or its outcome.

### 2. Appeal Log No. CCI-0-13-0723

On March 18, 2013, Plaintiff filed a second appeal concerning the excessive force incident and the resulting RVR, Appeal Log No. CCI-0-13-0723. Wood Decl. Ex. C (ECF No. 26-6 at 4-7). There, Plaintiff complained that he twice tried to appeal "in regard to incident upon 11-4-12 (RVR)," but each of his attempts was "disregarded & ignored." He claimed that video evidence of his innocence was ignored during the RVR process in violation of his due process rights. Plaintiff sought (1) the removal of the RVR, (2) the reinstatement of 12 points, and (3) his immediate release from the Segregated Housing Unit.

This appeal was bypassed at the First Level of Review and ultimately assigned to the Facility A Associate Warden for review. Wood Decl. Ex. C (ECF No. 26-6 at 4-6). Lt. Lopez interviewed Plaintiff on June 19, 2013, regarding his claims. Id. That same day, Plaintiff withdrew his appeal. See id. (ECF No. 26-6 at 3).

### 3. Appeal Log No. CCI-0-16-00905

On May 26, 2016, after he arrived at the facility where he is presently housed but nearly 1.5 months after initiating this action, Plaintiff filed another grievance concerning

4

the November 2012 excessive force incident and related RVR. Pl.'s Opp'n (ECF No. 29 at 41-44). There, he claimed his previous appeal was withdrawn based on threats from a lieutenant at CCI.

This appeal was canceled at the First Level of Review on timeliness grounds. See id. Plaintiff resubmitted an appeal, but it too was canceled. Id. (ECF No. 29 at 47-50).

### III. Legal Standards

#### A. Summary Judgment Standards

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins.

Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995)

(treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein are evidence for purposes of evaluating the defendants' motion for summary judgment.

### B. California's Administrative Exhaustion Rules

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[2]

---

[2] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in Plaintiff's pleading. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). See Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). Wilkerson and Sapp used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. Griffin is distinguishable because it discussed the Maricopa County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

**V.     Analysis**

Defendants move for summary judgment on the ground that Plaintiff did not exhaust either of his claims: (1) that CO Gonzales and CO Harris used excessive force on November 4, 2012, and (2) that Lt. Lopez retaliated against Plaintiff by threatening him with assault if he did not withdraw his grievance.[3] In support of their motion, Defendants have submitted evidence showing that Plaintiff did not properly exhaust administrative remedies as to either claim. As to the November 4, 2012, incident, Plaintiff's December 21, 2012, grievance was canceled as untimely. As to Lt. Lopez's conduct, no administrative grievance was filed in relation to it before this action was initiated. The Defendants have thus carried their burden to demonstrate that there were available administrative remedies for Plaintiff and that Plaintiff did not properly exhaust those available remedies as to either of his claims. The undisputed evidence shows that California provides an administrative-remedies system for California prisoners to complain about their conditions of confinement, and that Plaintiff used that California inmate-appeal system to complain about other events unrelated to his complaints here.

Plaintiff acknowledges that he did not receive a final decision as to either of his two claims. Since Defendants met their initial burden of so showing, the burden shifts to

---

[3] Defendants imply the presence of a third claim based on medical indifference, but Plaintiff is proceeding only on an Eighth Amendment excessive force claim and a First Amendment retaliation claim. See Nov. 22, 2016, Screening Order (ECF No. 15).

Plaintiff to come forward with evidence that something in his particular case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. He argues that the remedies were effectively unavailable to him because (1) the administrative procedures were confusing and (2) he was threatened during the course of the second grievance.

For a remedial procedure to be "available" it must exist both in law and, in actual practice, be "capable of use to obtain some relief for the action complained of." Ross, 136 S. Ct. at 1859 (internal quotation marks omitted). In Ross, the Supreme Court enumerated three instances where a procedure, in a practical sense, is unavailable: (1) when the process operates as a "simple dead end" with no actual possibility of relief to prisoners; (2) when the process is so opaque or confusing that it is "essentially unknowable—so that no ordinary prisoner can make sense of what it demands"; and (3) when prison officials thwart inmates from using the process through machination, misrepresentation, or intimidation. Id. at 1859–60 (internal quotation marks omitted).

### A. CO Gonzales and CO Harris

Turning first to the excessive force incident, Plaintiff argues that the appeal process is essentially unknowable—that is, so opaque and confusing that no ordinary prisoner can make sense of it. He contends that he closely read the prison regulations and filed his December 21, 2012, inmate appeal within thirty days of the December 13, 2012, RVR hearing. While the appeal was canceled as untimely as to the excessive force incident, Plaintiff claims that he was "tripped up" by the overlap between institutional regulations on the inmate grievance process and RVR hearings. He also claims that he was denied the opportunity to appeal to the Third Level based on Lt. Lopez's intimidation.

The Court will briefly summarize the regulations relevant to Plaintiff's first argument. As to inmate grievances, the time limit for submitting an appeal is 30 days from "(1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an

unsatisfactory departmental response to an appeal filed." Cal. Code Regs. tit. 15, § 3084.8(b). An inmate filing an appeal must attach supporting documents "that are needed to substantiate allegations made in the appeal," such as disciplinary reports with supplements and incident reports, but the inmate should not delay in submitting an appeal within time limits if he is unable to obtain supporting documents. Cal. Code Regs. tit. 15, §§ 3084(h), 3084.3(b).

An inmate charged with an RVR is, absent unique circumstances, provided a copy of a CDC Form 115 within 15 days of the incident at issue. Cal. Code Regs. tit. 15, § 3320(a). An RVR hearing must then be held within 30 days from the inmate's receipt of the CDC Form 115. Cal. Code Regs. tit. 15, § 3320(b). An inmate's appeal of a disciplinary action, which is an exception to the regular appeal process, requires the CDC Form 115 as a supporting document. Cal. Code Regs. tit. 15, § 3084.9(g); Cal. Dep't of Corr. & Rehab. Op. Manual § 54100.8. Finally, a disciplinary action is not considered complete until the hearing and any re-hearings are completed, as memorialized by the signature of the Chief Disciplinary Officer. Cal. Code Regs. tit. 15, § 3084.9(g); Cal. Dep't of Corr. & Rehab. Op. Manual § 54100.8. The date that this final RVR copy is issued to the inmate "shall serve to establish the time limits for filing an appeal of the RVR, not the date of the disciplinary hearing." Cal. Dep't of Corr. & Rehab. Op. Manual § 54100.20.

As Plaintiff read and understood these regulations, he was required to complete the RVR hearing before filing his inmate grievance concerning the excessive force incident and the related RVR. Since the RVR hearing did not occur until December 13, 2012, Plaintiff was under the impression that his December 21, 2012, appeal was timely, having been filed within 30 days of the hearing.

This understanding of the regulations was incomplete and incorrect. As noted supra, the time limit for Plaintiff to file his appeal on the RVR, a disciplinary action, began on the date that the entire RVR process was completed, not when the RVR hearing was held. Since this process can be long, as Plaintiff recognizes, it is deemed an exception

to the regular inmate appeal process. Under the regular appeals process, which applied to the excessive force incident, Plaintiff was required to file a timely grievance. It is true that the regulations require Plaintiff to attach supporting documents to his appeal, but they also specifically advise that an inmate should not delay submitting an appeal within time limits if he is unable to obtain supporting documents. In any event, Plaintiff admits that he received a copy of the RVR CDC 115 Form, a supporting document, on November 16, 2012; it thus could have been attached to a timely appeal filed before December 4, 2012. Plaintiff's December 21, 2012, appeal as it related to the excessive force incident was therefore untimely and properly canceled.

Plaintiff's misinterpretation of the regulations is insufficient to prove that a regulation is so "opaque" that, in a practical sense, it is unavailable. While "[p]risoners should not need a law degree and an understanding of every corner of [state] statutes and case law to understand what claims need to be exhausted[,]" Compton v. Cox, 2017 WL 93 33152, at *7 (W.D. Wis. Mar. 8, 2017), these regulations are not so confusing as to make the grievance process unavailable to the ordinary prisoner.

### 1. "Routine Appeal" v. "Staff Complaint"

Nonetheless, and notwithstanding the tardiness of Plaintiff's grievance, CCI referred the excessive force allegation outside of the appeals process to the Chief Deputy Warden for a "Determination of Staff Complaint."

Like a disciplinary action, a staff complaint is deemed an exception to the regular appeal process. See Cal. Code Regs. § 3084.9(i). Pursuant to California Code of Regulations § 3084.5(b)(4), when an appeal describes staff behavior "in violation of a law, regulation, policy, or procedure…," then "the matter shall be referred pursuant to subsection 3084.9(i)(1) and (i)(3), to determine whether it shall be (A) Processed as a routine appeal but not as a staff complaint. (B) Processed as a staff complaint appeal inquiry. (C) Referred to Internal Affairs for an investigation/inquiry." If an internal affairs investigation is initiated, the inmate must be informed of the investigation and, eventually, its outcome. Id. § 3084.9(i)(4)(A). If a confidential inquiry is initiated, the

1 inmate must be informed of the inquiry and, eventually, whether the findings determined
2 that staff did or did not violate policy. Id. § 3084.9(i)(4)(B).

3 On review, the Chief Deputy Warden assigned the appeal to the Associate
4 Warden for an "Appeal Inquiry." It thus appears that CCI processed Plaintiff's allegations
5 pursuant to § 3084.5(b)(4)(B) as a "staff complaint appeal inquiry." In other words, it was
6 not deemed a routine appeal and it was not referred to Internal Affairs.

7 On similar facts, the Ninth Circuit in Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005),
8 held that an inmate whose appeal had been partially granted at the second level and
9 referred to the Office of Internal Affairs for investigation had exhausted his administrative
10 remedies where the defendant failed to show any additional relief was available through
11 the appeals process. Id. at 937-39. Because the defendant did not present evidence
12 indicating that a further appeal might have "netted" additional relief, he failed to
13 demonstrate that further relief remained available. Id. at 939.

14 Here, it is not clear from the record what occurred after Plaintiff's allegations were
15 deemed a "staff complaint" and referred for an "Appeal Inquiry." Once an appeal is
16 categorized as a staff complaint, there is "no possibility that it would be investigated
17 again, separately, through the appeal process," and therefore "no further relief was in
18 fact 'available' through the appeals process, although the staff complaint process to
19 which the grievance was directed instead had not yet run its course." Brown, 422 F.3d at
20 938-39. It is important to remember that the purpose of the exhaustion requirement is to
21 "provide prison officials a 'fair opportunity to correct their own errors' and creates an
22 administrative record for grievances that eventually become the subject of federal court
23 complaints.'" Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016) (citing Woodford v. Ngo,
24 548 U.S. 81, 94 (2006)). An appeal inquiry, then, even if it occurs outside of the normal
25 appeals process, would satisfy this requirement.

26 Since an inmate is required to exhaust only those administrative remedies "'as are
27 available,'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. §
28 1997e(a)); Albino, 747 F.3d at 1171, and since it is unclear whether those administrative

remedies remained available to Plaintiff following the designation of his grievance as a staff complaint and its referral for an "Appeal Inquiry," the undersigned concludes that Defendants failed to meet their ultimate burden to show that Plaintiff failed to exhaust available administrative remedies as to the excessive force incident.

### 2. The Naming Requirement

Defendants next argue that to the extent the December 21, 2012, appeal is found to be exhausted, it nonetheless fails to exhaust Plaintiff's allegations against CO Harris since this Defendant is not named or referenced in the appeal.

Plaintiff counters that he attempted to exhaust his administrative remedies by filing another grievance specifically naming CO Harris and CO Gonzales, but he never received a response to this other grievance. In support, Plaintiff refers to his March 2013 grievance wherein he mentioned that he attempted to exhaust his remedies twice before with no response. Plaintiff does not provide a date for the filing of this other grievance, and there is no copy of it in the record. Regardless, the Court finds it unnecessary to reach the issue of this missing grievance for the reasons set forth below.

Pursuant to institutional regulations, Plaintiff was required to include sufficient facts to give notice of his claims and identify the individuals involved. See Cal. Code Regs. tit. 15, § 3084.2(a)(3) (inmate must "list all staff member(s) involved and … describe their involvement in the issue."). Plaintiff's grievance did not comply with this procedural directive since he did not name Defendant CO Harris. Indeed, Plaintiff's appeal makes no reference at all to a second individual involved in the excessive force incident, and Plaintiff sought relief that was limited to reducing the pay of CO Gonzales. Arguably, he failed to exhaust his remedies as to CO Harris on this ground.

Problematic here is that CO Gonzales's November 6, 2012, RVR identified CO Harris as involved in the incident. See Wood Decl. Ex. C (ECF No. 26-6 at 9). Additionally, the CDC 115 Form noted that CO Harris struck Plaintiff twice in the leg. Wood Decl. Ex. C (ECF No. 26-6 at 11). The Crime Incident Report drafted by a Sgt. Adams on the day of the incident also identified CO Gonzales and CO Harris as holding

Plaintiff on the ground in restraints. Id. (ECF No. 26-6 at 19). Lastly, Plaintiff's November 22, 2012, statement during the investigation into the RVR revealed CO Harris's involvement. See Pl.'s Supp. Opp'n Attach. (ECF No. 33 at 2). In his statement, Plaintiff specifically said that "[CO Harris] beat me in the leg twice for nothing …" after arriving on the scene. Id. Plaintiff then noted that once he was placed in the cell, "CO Harris punched me in my face twice and once in the rib." Id. These allegations are consistent with those asserted in this action.

Prison officials thus plainly knew who was involved in the incident on November 4, 2012, and had notice of the alleged deprivation and ample opportunity to resolve it. Of course, the prison officials must have addressed CO Harris's involvement "at each available step of the administrative process." Reyes, 810 F.3d at 658. However, without any information in the record about the status of the Appeal Inquiry into Plaintiff's staff complaint, and viewing all of the evidence in the light most favorable to Plaintiff, the Court concludes that Defendants have not satisfied their burden of showing that Plaintiff failed to exhaust his available administrative remedies as to CO Harris.

In light of these findings, the undersigned declines to reach Plaintiff's argument that Lt. Lopez's intimidation prevented him from exhausting his administrative remedies as to either CO Gonzales or CO Harris.

**B.     CO Lopez**

Defendants next argue that neither of Plaintiff's appeals— Appeal Log No. CCI-0-12-03124 and Appeal Log No. CCI-0-13-723—exhausted his administrative remedies as to Lt. Lopez, who is alleged to have threatened Plaintiff in June 2013 if he did not drop his second appeal. Of course neither of these grievances would have sufficed to exhaust Plaintiff's claim against Lt. Lopez since they predate his conduct.

While Plaintiff did attempt to exhaust his administrative remedies as to Lt. Lopez upon his transfer to another institution where he claims he felt safer to reassert his allegations, this attempt occurred after he initiated this action. The law is clear though that exhaustion must occur before filing suit. Jones v. Bock, 549 U.S. 199, 202 (2007).

Accordingly, the undersigned concludes that Plaintiff failed to exhaust his administrative remedies as to Lt. Lopez before filing this action.

**VI.     Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that a district judge be assigned to this case; and

IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment for failure to exhaust administrative remedies be GRANTED IN PART as follows:

1. Defendants' motion be DENIED as to CO Gonzales and CO Harris;
2. Defendants' motion be GRANTED as to Lt. Lopez.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     October 24, 2017              /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE