1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11   ISAIAH JOEL PETILLO,                     **CASE No. 1:16-cv-0488-AWI-JLT (PC)**

12               Plaintiff,                  **ORDER GRANTING IN PART**
                                           **PLAINTIFF'S MOTION TO COMPEL**

13             v.                           **FURTHER REPONSES TO REQUEST**
                                           **FOR PRODUCTION OF DOCUMENTS**

14   J.L. PETERSON, et al.,

15               Defendants.                **(Doc. 59)**

16                                         **SEVEN-DAY DEADLINE**

17        Plaintiff moves to compel production of documents responsive to his Request for

18  Production of Documents. (Doc. 59.) Defendants oppose the motion and request that the Court

19  either deny the motion or conduct an *in camera* review. They also seek a protective order to permit

20  plaintiff to review some of the privileged documents listed on their privilege log. For the reasons

21  set forth below, plaintiff's motion will be granted in part.

22  **I.**     **Plaintiff's Allegations**

23        On November 4, 2012, CO Gonzalez placed handcuffs on plaintiff tightly and roughly

24  escorted him from his cell to outside the building where plaintiff was housed. Once outside, CO

25  Gonzalez slammed plaintiff onto the pavement without provocation, injuring plaintiff's left

26  shoulder, left elbow, left knee, and the left side of his face. Plaintiff was stunned and bleeding.

27  CO Gonzalez then sat on plaintiff's head, and he pressed his right knee hard into plaintiff's face

28  and head.

1  An alarm was activated from the yard gun tower. Within seconds, multiple prison guards

2  came running to where CO Gonzalez and plaintiff were. One of the guards, CO Harris, struck

3  plaintiff twice with a steel baton, again without provocation. Plaintiff was still on the ground at

4  this point. Though this defendant was yelling "Stop resisting," plaintiff was not resisting.

5       Following this incident, plaintiff was taken to the medical unit where CO Harris directed

6  plaintiff to face the wall. When plaintiff complied, CO Harris punched plaintiff twice in the

7  facial/head area.

8  **II.    Legal Standards**

9       Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

10  regarding any nonprivileged matter that is relevant to any party's claim or defense and

11  proportional to the needs of the case, considering the importance of the issues at stake in the

12  action." Information that is within the scope of discovery "need not be admissible in evidence to

13  be discoverable." Fed. R. Civ. P. 26(b)(1).

14       Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, "any party may serve on

15  any other party a request to produce and permit the party making the request . . . to inspect and

16  copy any designated documents . . . which are in the possession, custody or control of the party

17  upon whom the request is served." Fed. R. Civ. P. 34(a)(1). "[A] party need not have actual

18  possession of documents to be deemed in control of them." Clark v. Vega Wholesale Inc., 181

19  F.R.D. 470, 472 (D. Nev. 1998) quoting Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev.

20  1991). "A party that has a legal right to obtain certain documents is deemed to have control of the

21  documents." Clark, 181 F.R.D. at 472; Allen v. Woodford, No. CV–F–05–1104 OWW LJO, 2007

22  WL 309945, *2 (E.D. Cal. Jan. 30, 2007) (citing In re Bankers Trust Co., 61 F.3d 465, 469 (6th

23  Cir. 1995)); accord Evans v. Tilton, No. 1:07CV01814 DLB PC, 2010 WL 1136216, at *1 (E.D.

24  Cal. Mar. 19, 2010).

25       Under Rule 34(b), the party to whom the request is directed must respond in writing that

26  inspection and related activities will be permitted as requested, or state an objection to the request,

27  including the reasons. Fed. R. Civ. P. 34(b)(2). Also, "[a] party must produce documents as they

28  are kept in the usual course of business or must organize and label them to correspond to the

1  categories in the request." Fed. R. Civ. P. 34(b)(E)(I).

2       Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may

3  move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P.

4  37(a)(3) (B). The court may order a party to provide further responses to an "evasive or

5  incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have

6  'broad discretion to manage discovery and to control the course of litigation under Federal Rule

7  of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting

8  Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)). Generally, if the

9  responding party objects to a discovery request, the party moving to compel bears the burden of

10  demonstrating why the objections are not justified. E.g., Grabek v. Dickinson, No. CIV S–10–

11  2892 GGH P., 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); Ellis v. Cambra, No. 1:02–cv–

12  05646–AWI–SMS (PC), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). This requires the

13  moving party to inform the Court which discovery requests are the subject of the motion to

14  compel, and, for each disputed response, why the information sought is relevant and why the

15  responding party's objections are not meritorious. Grabek, 2012 WL 113799, at *1; Womack v.

16  Virga, No. CIV S–11–1030 MCE EFB P., 2011 WL 6703958, at *3 (E.D. Cal. Dec. 21, 2011).

17  **III.    Discussion**

18       Plaintiff takes issue with defendants' responses to five requests for production of

19  documents. Defendants oppose each request as follows.

20       **A. Request No. 1**

21       In Request No. 1, plaintiff sought "The security video footage recording for [California

22  Correctional Institution ("CCI")] A yard. Specifically camera footage of 11-4-2012. Camera

23  adjacent to the rotunda. Going in the inmate exercise yard facing 4A sidewalk SHU. Or any & all

24  footage viewed by the I.S.U/Prison official – regarding the staff complaint investigation use of

25  force."

26       Defendants responded to this request by asserting several objections, including that it was

27  vague, ambiguous, and impermissibly compound. They then noted that "[a]fter a diligent search

28  and reasonable inquiry," there does not exist video footage of the incident. As for footage related

1  to the investigation into plaintiff's claim, defendants identified a video-taped interview of plaintiff

2  conducted on January 8, 2013. Defendants offered to make this video available for viewing

3  through Plaintiff's correctional counselor.

4      Plaintiff claims this response is inadequate, and he challenges the defendants' objections

5  that the request is vague, ambiguous, and impermissibly compound. The Court agrees that the

6  request is sufficiently specific to overcome objections based on vagueness and ambiguity. While

7  it is compound, there is no serious argument that the two-part request is irrelevant or otherwise

8  improper.

9      Concerning video footage of the incident, plaintiff claims footage exists since he was

10  informed by the officer who conducted the disciplinary hearing following the excessive force

11  incident that he reviewed the security camera. In their response, defendants claim that they were

12  unable to locate a video after conducting a "diligent search and reasonable inquiry." In the Court

13  view, this is sufficient. As for the second portion of this request, plaintiff has not identified how

14  the defendants' response is inadequate. For this reason, his motion as to Request No. 1 will be

15  **DENIED**.

16      **B. Request No. 2**

17      In Request No. 2, plaintiff sought "The footage recording of use of force investigation

18  recording. Plaintiff use of force statement & injuries."

19      Defendants asserted several objections in response to this request. They also offered to

20  make the January 8, 2013, video of plaintiff's interview available for viewing through Plaintiff's

21  correctional counselor.

22      In the pending motion, plaintiff states that he should not be prohibited from obtaining a

23  copy of the use of force injury video via a CD Rom disc. He also claims that, despite request, he

24  has been unable to view the video. Defendants contend that a "Departmental policy" prohibits

25  plaintiff from retaining a copy of the video, but they do not specify that policy. In any event, it

26  appears that plaintiff viewed the video on June 15, 2018, and there is no argument that this was

27  insufficient. See Decl. of L. Sheet in Supp. of Defs.' Opp'n to Pl.'s Mot. to Compel (EC No. 67 at

28  15-17) Decl. ¶ 8. Accordingly, plaintiff's motion as to Request No. 2 will be **DENIED**.

**C. Request No. 3**

In Request No. 3, plaintiff sought "Any & All; tangible documents, investigation notes, books, documents of any & all prison officials, internals affairs/outside resource who had anything to do with Nov. 4th 2012 use of force investigation. Fed. Rules of Civ Pro. 26(b)(1) including any & all relevant material in subjection to this matter, including."

Defendants asserted several objections and then produced the following: a CDCR 837 Crime / Incident Report, Log No. CCI-FAA-12-11-0269, and a CDCR 115 Rules Violation Report, Log No. FA-12-11-0004. They also produced a privilege log identifying documents that they assert are protected by the Official Information Privilege for the safety and security of the institution. The privilege log identifies two categories of documents: (1) the records and results of the investigation into plaintiff's inmate appeal (CONFID, 1-2, 5-6, 7-10, 45-46, and 56) (the "first category"), and (2) documents relating to the internal deliberations of prison officials in evaluating and critiquing the use of force by its prison staff and a medical record of another inmate (CONFID 3, 11-14, 15-21, 22-29, 30-32, 33-34, 35-44, and 47-55) (the "second category").

"Assertions of privilege in federal question cases are governed by federal common law." Dowell v. Griffin, 275 F.R.D. 613, 616 (S.D. Cal. 2011) (citing Fed. R. Evid. 501); see also Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law.") (citation omitted); Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987) ("State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases.") (citation omitted).

Federal common law recognizes a "qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. U.S. Dist. Ct., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)). The party asserting the privilege has the burden of proving the privilege. Kelly, 114 F.R.D. at 662; see also Hampton, 147 F.R.D. at 231 ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) and Miller v.

1   Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege.");

2   Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying Kelly).

3           To determine whether the privilege applies in a particular case, "courts must weigh the

4   potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-

5   34. The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo,

6   59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process:

7   (1) the extent to which disclosure will thwart governmental processes by discouraging citizens

8   from giving the government information; (2) the impact upon persons who have given

9   information of having their identities disclosed; (3) the degree to which government self-

10  evaluation and consequent program improvement will be chilled by disclosure; (4) whether the

11  information sought is factual data or evaluative summary; (5) whether the party seeking the

12  discovery is an actual or potential defendant in any criminal proceeding either pending or

13  reasonably likely to follow from the incident in question; (6) whether the police investigation has

14  been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may

15  arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good

16  faith; (9) whether the information sought is available through other discovery or from other

17  sources; and (10) the importance of the information sought to the plaintiff's case. Kelly, 114

18  F.R.D. at 663. In making this determination, courts must conduct "a situation specific analysis of

19  the factors made relevant by the request in issue and the objection to it." Id.

20          Under certain conditions, investigatory files compiled for law enforcement purposes are

21  privileged. See, e.g., In re City of New York, 607 F.3d 923, 945 (2d Cir. 2010); Friedman v.

22  Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984); Soto v. City of

23  Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995). The privilege acts to "prevent disclosure of

24  information that would be contrary to the public interest in the effective functioning of law

25  enforcement." Tuite v. Henry, 181 F.R.D. 175, 176 (D.D.C. 1998). Courts apply the privilege to

26  protect both civil and criminal investigatory files. See, e.g., City of New York, 607 F.3d at 945

27  (criminal investigatory files); McPeek v. Ashcroft, 202 F.R.D. 332, 336 (D.D.C. 2001) (non-

28  criminal investigatory files). Courts also apply the privilege to protect information related to both

ongoing and closed investigations. See, e.g., Jones v. City of Indianapolis, 216 F.R.D. 440, 447 (S.D. Ind. 2003) (ongoing investigations); Borchers v. Commercial Union Assurance Co., 874 F.Supp. 78, 80 (S.D.N.Y. 1995) (closed investigations). The Ninth Circuit has noted that the privilege is qualified, "contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken." Kerr, 511 F.2d at 198.

"The governmental privilege must be formally asserted and delineated in order to be raised properly." Kerr, 511 F.2d at 198 (citing United States v. Reynolds, 345 U.S. 1, 7-8 (1953)). "The claiming official must have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced and state with specificity the rationale of the claimed privilege." Id. (quotations omitted). As the D.C. Circuit Court of Appeals explained in greater detail, to assert the privilege, three requirements must be met:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).

In support of their claim of the official information privilege, defendants submitted a privilege log and the declaration of M. Dailo, the litigation coordinator at California Correctional Institution in Tehachapi, California. Sheet Decl. Ex. 3. M. Dailo declares to have personally reviewed the documents identified in the privilege log and claims that some of the identified documents should not be produced because of personal information contained therein or because they are treated as highly sensitive. For other identified documents, M. Dailo states that they can produced under limited circumstances (e.g., accessed through the litigation coordinator for a limited time only).

Regarding the confidential investigative documents listed in the privilege log, M. Dailo states generally that their production would "diminish the effectiveness of the investigations process and the benefits of the investigations" if inmates and the public were "to understand the tactics and techniques used by officers to defend against the inmates or to quell a prison

7

disturbance…." Dailo Decl. ¶ 22. Regarding personal information of inmates and correctional staff whose names and records are in responsive documents, M. Dailo states that these individuals would need to be notified pursuant to California regulations, that the records of another inmate's medical information should be protected from disclosure, and that the release of this information would jeopardize the safety and security of the institution. Dailo Decl. ¶ 23.

Federal courts recognize a constitutionally-based right of privacy that may be asserted in response to discovery requests. Soto, 162 F.R.D. at 616; Medina, 2014 WL 4793026, at *4. In resolving privacy objections, courts balance the need for the requested information against the asserted privacy right. Id. "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential." Soto, 162 F.R.D. at 616; Kelly, 114 F.R.D. at 660. "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." Soto, 162 F.R.D. at 616. Further, privacy rights could be adequately protected by a "tightly drawn" protective order. See Kelly, 114 F.R.D. at 662, 666, 671; Hampton, 147 F.R.D. at 231. Defendants' privacy concerns can be addressed by redacting home address, full names, social security numbers and the like, and by entering a protective order.

In their opposition to plaintiff's motion to compel, defendants state that they are have arranged to provide plaintiff access to the first category of documents subject to a protective order through his correctional counselor. As to the second category of documents, defendants maintain that the documents should not be produced at all.

Plaintiff, who spends a considerable portion of his motion arguing that the documents he seeks are relevant to his excessive force claim, does not challenge the defendants' invocation of the official information privilege. Additionally, he concedes that certain information, including the personnel information of correctional staff and information on other inmates, should not be produced. Likewise, at least as of now, the Court cannot see how the determinations made by a third party to this litigation, can bear on the issues here.

In any event, due to the sensitive nature of the documents identified by the defendants as "category 2," the Court will reserve ruling on plaintiff's motion to compel as to these documents

until after an *in camera* review. The defendants are **ORDERED** to lodge to JLTOrders@caed.uscourts.gov, the "category 2" within seven days. The Court will review the documents and determine whether they must be disclosed to plaintiff.

### D. Request No. 4

In Request No. 4, plaintiff sought "Any & all disciplinary reprimands & 602 complaints of use of force & such alike. Def. R. Harris & J. Gonzales."

Defendants asserted several objections and then produced a copy of plaintiff's 602 appeal, Log No. CCI-0-12-03124, and 602 Appeal Log No. CCI-0-13-00723. They also produced a privilege log and the declaration of M. Dailo and, in a supplemental response, the declaration of J. Wood, Appeal Coordinator at CCI, identifying documents that they assert are protected by the Official Information Privilege for the safety and security of the institution. See Sheet Decl. ¶ 9, Ex. 4. The privilege log identifies several inmate appeals filed against both defendants, and defendants have offered to make this information available to plaintiff through the litigation coordinator and subject to a protective order for "Plaintiff's Eyes Only."

Plaintiff claims this production was inadequate because inmate complaints of use of force "will help the Court and jurors see the chronical conduct & behavior of the [defendants and] also assist plaintiff to explain to the jurors what type of character the [defendants] possess." MTC at 9.

"[I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them." Soto, 162 F.R.D. at 610 (citing Kelly, 114 F.R.D. at 667-68). Records of citizen complaints against law enforcement involving excessive force are relevant in civil rights cases because such records may be relevant to show "[a] [d]efendant's history or pattern of such behavior." Soto, 162 F.R.D. at 620; Medina, 2014 WL 4793026, at *11 (same). However, to be discoverable, the moving party must "show how information of the *kind* that is likely to be in the files could lead to admissible evidence." Soto, at 610. Nevertheless, that the officers have engaged in the excessive use of force before or have characters, is exactly the time of evidence that is not admissible to prove liability in this case. Fed.R.Evid. 404(b).

In addition, there are only two individual defendants to this case. Having chosen to file

1  this action in federal court, the plaintiff forewent the option of suing the CDCR, as their

2  employer.  Consequently, this evidence would also not be relevant to show notice to the employer

3  or ratification by the employer.

4  On the other hand, if the other incidents are sufficiently similar, there is a chance the

5  records *may* be admissible for other reasons such as motive of the officers. Hampton, 147 F.R.D.

6  at 229. "[I]nformation concerning other instances of misconduct may also be relevant on the issue

7  of punitive damages, in that the information may lead to evidence of a continuing course of

8  conduct reflecting malicious intent." Id.

9  The defendants make generalized claims of "safety and security risk[s]" and they assert

10  privacy concerns that can be addressed through redactions and a protective order. Indeed,

11  defendants have offered to make documents responsive to this request available to plaintiff on

12  such terms.

13  The Court will reserve ruling on plaintiff's motion to compel as to Request No. 4 pending

14  *in camera* review. The defendants are **ORDERED** to lodge to JLTOrders@caed.uscourts.gov the

15  documents responsive within seven days. After review, the Court will determine whether they

16  must be disclosed to plaintiff.

17  **E.  Request No. 5**

18  In Request No. 5, plaintiff sought "The D.O.M Rule & Reg. Procedure & Institutional

19  Protocol procedure on the topics – specifically, training & how the guards are suppose[d] to act –

20  mitigate combative prisoners 'in handcuffs restraints.'"

21  In response, defendants produced a copy of Cal. Code Regs., tit. 15, §§ 3391, Employee

22  Conduct; 3268, Use of Force; 3268.2, Use of Restraints; and CDCR Department Operations

23  Manual, Article 2, Use of Force, § 51020.1 et seq.

24  While plaintiff expresses dissatisfaction with this request, he fails to explain why the

25  defendants' production of these regulations is insufficient. His motion as to Request No. 5 is

26  **DENIED**.

27  **F.  Sanctions**

28  In addition to the foregoing, plaintiff seeks monetary sanctions for alleged discovery

abuses. The Court finds no reason to impose sanctions and will thus **DENY** this request.

**IV.     Conclusion**

Based on the foregoing, the Court **GRANTS IN PART** plaintiff's motion to compel (Doc. 59) as follows:

      1.  Plaintiff's motion is **DENIED** as to Request Nos. 1, 2 and 5;

      2.  The ruling on Plaintiff's motion as to Request Nos. 3 (category 2 documents[1]) and 4 is

          **RESERVED**.

          a.     Within seven days, defendants **SHALL** lodge an unredacted copy to JLTOrders@caed.uscourts.gov, of the documents identified as "category 2" in response to Request No. 3 and the responsive documents in response to Request No. 4 for *in camera* review.  The Court will rule determine whether any of these documents should be disclosed after completing the review.

      3.  Plaintiff's his request for sanctions is **DENIED**.

IT IS SO ORDERED.

    Dated:     **October 25, 2018**                          **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE

---

[1] The category 1 documents should have been produced already.  If they have not, they SHALL be made available to the plaintiff for review within seven court days.